IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                                              PLAINTIFF,

v.                                          CIVIL ACTION NO. 1:20-cv-__201 HSO-JCG___

$33,600.00 UNITED STATES CURRENCY,
$4,400.00 UNITED STATES CURRENCY,
$5,000.00 UNITED STATES CURRENCY,
$3,660.00 UNITED STATES CURRENCY,                          DEFENDANT PROPERTY.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through its United States Attorney and the undersigned Assistant U.S. Attorney for the Southern District of Mississippi, brings this Verified Complaint for Forfeiture *in rem,* in accordance with Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules") and the Federal Rules of Civil Procedure, and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action by the United States seeking forfeiture of $33,600.00 and $3,660.00 in U.S. Currency, seized on January 17, 2020, from Isaac Jonathan MERCADO-BARRERA, and $4,400.00 and $5,000.00 in U.S. Currency seized on January 17, 2020, from Servando MERCADO-PINEDA (the "defendant property").  The defendant property is subject to forfeiture under 21 U.S.C. § 881, 18 U.S.C. §§ 981(a)(1)(A) and (C), and 31 U.S.C. §§ 5317 and 5332(c) because the defendant property is involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), 18 U.S.C. § 1956(a)(2) (international money laundering), 18 U.S.C. § 1956(h) (money laundering conspiracy), 31 U.S.C. §§ 5316(a) (failure to file a Report of International Transportation of Currency or Monetary

Instruments (CMIR)), 5324(c) (structuring), and 5332 (bulk cash smuggling), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses).

## THE DEFENDANT IN REM

2.      The defendant property consists of $33,600.00 and $3,660.00 in U.S. Currency, seized from Isaac Jonathan MERCADO-BARRERA, and $4,400.00 and $5,000.00 in U.S. Currency seized from Servando MERCADO-PINEDA, which was seized by the U.S. Drug Enforcement Administration on January 17, 2020, in D'Iberville, Mississippi, within the Southern District of Mississippi, Southern Division.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355.

4.      Venue is proper in the Northern Division of the Southern District of Mississippi pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a), because the acts and/or omissions giving rise to the forfeiture occurred in this district and/or pursuant to 28 U.S.C. § 1395(b), because the defendant property was found and seized in this District.

## BASIS FOR FORFEITURE

5.      The defendant property is subject to forfeiture under 21 U.S.C. § 881, 18 U.S.C. §§ 981(a)(1)(A) and (C), and 31 U.S.C. §§ 5317 and 5332(c) because the defendant property is involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), 18 U.S.C. § 1956(a)(2) (international money laundering), 18 U.S.C. § 1956(h) (money laundering conspiracy), 31 U.S.C. §§ 5316(a) (failure to file a Report of International Transportation of Currency or Monetary Instruments (CMIR)), 5324(c) (structuring), and 5332 (bulk cash smuggling), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses).

6.      The Controlled Substances Act, 21 U.S.C. § 801, *et seq.,* and 21 U.S.C. § 881 make subject to forfeiture to the United States any proceeds derived, and any facilitating property, from any knowing violation of 21 U.S.C. §§ 841(a)(1), 846, and 848, which is drug distribution, drug conspiracy, and continuing criminal enterprise.

7.      Title 18, United States Code, Section 981(a)(1)(A), makes subject to forfeiture to the United States any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property.  Title 18, United States Code, Section 981(a)(1)(C), makes subject to forfeiture to the United States any property, real or personal, which constitutes or is traceable to a violation of any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense.

8.      Title 31, United States Code, Section 5317(c)(2)(A), makes subject to forfeiture to the United States any property involved in a violation of 31 U.S.C. §§ 5313, 5316, or 5324, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy.  Title 31, United States Code, Section 5332(c)(1), makes subject to forfeiture to the United States any property involved in a violation of 31 U.S.C. § 5332(a), or a conspiracy to commit any such violation, and any property traceable to such violation or conspiracy.

9.      Both 21 U.S.C. § 881(h) and 18 U.S.C. § 981(f) provide that all right, title, and interest in property described in 21 U.S.C. § 881(a) and 18 U.S.C. § 981(a) shall vest in the United States upon commission of the act giving rise to forfeiture under 21 U.S.C. § 881 and 18 U.S.C. § 981.

## FACTS AND CIRCUMSTANCES

10.     A detailed account of the facts and circumstances of the seizure at issue, and the basis for this instant forfeiture action, is set out in the Declaration of DEA Task Force Officer Robert W. Drace, attached hereto as Exhibit "A" and fully incorporated herein by reference.

## CLAIM FOR RELIEF

11.     Plaintiff United States requests that the Clerk of Court for the U.S. District Court for the Southern District of Mississippi issue an Arrest Warrant *in rem* for the arrest of the defendant property under Supplemental Rule G(3)(b), which the United States will execute upon the defendant property located in the custody of the DEA under 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

12.     Plaintiff United States prays that process issue to enforce the forfeiture of the defendant property and that all persons having an interest in the defendant property be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the defendant property to the United States for disposition according to law and that this Court grant the United States such further relief as this Court may deem just and proper, together with the costs and disbursements in this action.

**RESPECTFULLY SUBMITTED**, this the 16th day of June, 2020.

D. MICHAEL HURST, JR.
United States Attorney

By:     /s/ *Marc A. Perez*
Marc A. Perez (WA Bar No. 33907)
Assistant United States Attorney
501 E. Court Street, Suite 4.430
Jackson, Mississippi 39201-0101
Phone:        601-973-2820
Fax:          601-965-4409
E-Mail:       Marc.Perez@usdoj.gov

## VERIFICATION

I, Robert W. Drace, hereby verify and declare under penalty of perjury, that I am a Task Force Officer with the Drug Enforcement Administration (DEA), that I have read the foregoing Verified Complaint for Forfeiture *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint for Forfeiture *in rem* are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States of America, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a DEA Task Force Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this the 16th day of June, 2020.

ROBERT W. DRACE
Task Force Officer
Drug Enforcement Administration

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**DECLARATION IN SUPPORT OF VERIFIED COMPLAINT**

Under 28 U.S.C. § 1746, I, Robert W. Drace, Task Force Officer, Drug Enforcement Administration ("DEA"), United States Department of Justice, make the following unsworn declaration, under the penalty of perjury, pertinent to the above-styled and numbered case:

**I.      Introduction**

1.      This declaration is made in support of a Verified Civil Complaint for forfeiture of property seized pursuant to a valid traffic stop.  The defendant property is subject to forfeiture under 21 U.S.C. § 881, 18 U.S.C. §§ 981(a)(1)(A) and (C), and 31 U.S.C. §§ 5317 and 5332(c) because the defendant property is involved in or constitutes the proceeds of drug trafficking and was being transmitted by courier, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), 18 U.S.C. § 1956(a)(2) (international money laundering), 18 U.S.C. § 1956(h) (money laundering conspiracy), 31 U.S.C. §§ 5316(a) (failure to file a Report of International Transportation of Currency or Monetary Instruments (CMIR)), 5324(c) (structuring), and 5332 (bulk cash smuggling), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses).  This declaration is based upon my personal knowledge and experience obtained as case agent in the above case and information I have received from other law enforcement officials.

**II.      Declarant's Background and Experience**

2.      I am employed by the Harrison County Sheriff's Office and have been assigned as a task force officer with the DEA for approximately seven years.  I currently work in the Gulfport

Resident Office, where I investigate criminal and civil violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* I have received specialized training in laws relating to the enforcement of the Controlled Substances Act and have testified in judicial proceedings for violations of the Controlled Substances Act.

3.      Since my assignment as a DEA Task Force Officer, I have participated in debriefing dozens of defendants, informants, and witnesses who had personal knowledge about narcotics, narcotics trafficking, and methods of narcotics distribution. I have participated in all aspects of a drug investigation, including conducting surveillance, executing search warrants, executing arrests, working with confidential informants, and using court-ordered eavesdropping devices. As a result of my assignment, and by virtue of my employment as a law enforcement officer, I have performed and continue to perform various duties, which include but are not limited to:

    a.      Working in an undercover capacity to purchase drugs from wholesalers of illegal narcotics;

    b.      Working as a surveillance agent to detect and record movement of persons known to be or suspected of being involved in illegal drug trafficking; and

    c.      Working as a case agent, directing investigations of various illegal drug traffickers and their organizations, and investigations involving complex conspirators in which numerous drug traffickers, located in various states and foreign countries, were illegally importing, possessing, and distributing illegal drugs within the United States.

4.      Through training and experience, and through the training and experience of other narcotics agents with whom I have talked, I have learned the following:

    a.      That criminal organizations, including large-scale drug traffickers, maintain and handle large amounts of United States currency in order to finance their ongoing illicit businesses;

b.    That it is common practice for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in locations within their residences, vehicles, and/or place of business to conceal them from law enforcement authorities;

c.    That persons involved in large-scale drug trafficking conceal in their residences, vehicles and businesses caches of drugs, large amounts of currency, and evidence of financial transactions relating to the obtaining and secreting of large sums of money acquired from engaging in narcotics-trafficking activities;

d.    That it is a common practice for large-scale drug traffickers to travel to distribution areas to facilitate their trafficking; that after purchasing drugs, the drug trafficker will transport, or cause to be transported, drugs to other areas for distribution; and that the methods of transportation include, but are not limited to, rental and private automobiles;

e.    That traffickers use vacuum-sealed bags, tape and/or rubber bands to bundle their illegal proceeds for transport back to Mexico or source destinations. By vacuum sealing the money, drug traffickers attempt to make it difficult for law enforcement canine units to detect trace amounts of illegal drugs, which have touched the drug proceeds and by vacuum sealing and/or using tape to package the proceeds, it condenses the package of bulk currency, allowing it to be more easily concealed.  The bundled cash may be concealed in clothing or luggage or hidden in mechanical or electronic traps within the vehicle, depending on the sophistication of the smugglers' organization. When the currency is bundled by rubber bands, it is common for the bundles to be in thousand-dollar increments;

f.    That money couriers, individuals specializing in the transportation of money rather than narcotics, take a percentage of the illegal proceeds that they transport;

g.    That, as a general rule, illegal drugs are transported from Mexico into the United States, while drug proceeds are transported from the United States into Mexico;

h.    That couriers for drug traffickers continually buy, trade, and sell vehicles in an attempt to elude law enforcement; that couriers believe by obtaining a newly registered vehicle, any past wrongdoings or information obtained by law enforcement will not be found; that couriers' vehicles often have a "lived in look" due to long trips with

few stops; that this "lived in look" can consist of excessive amounts fast food wrappers, open and unopened soft drinks or water bottles, energy drinks, an ice chest, etc.;

i.     That it is common practice for drug traffickers to pay their couriers based on the type and amount of narcotics and/or the amount of narcotics proceeds transported; and that because new couriers are not normally trusted with bulk currency or bulk narcotics, if a courier is found in possession of bulk currency or narcotics, it is often an indicator that the courier is well established and trusted within an organization;

j.     That couriers for drug trafficking organizations often use multiple cellular phones.  Much like continually changing vehicles and registrations, couriers and drug traffickers believe changing cellular phones will help elude law enforcement;

k.     That it is common for couriers to cross the border of Mexico prior to and after transporting narcotics and/or narcotic proceeds; and that often couriers enter Mexico to have the narcotics loaded into the "traps" or hidden compartments; on the return trip, the traps often contain proceeds from the sale of narcotics;

l.     That, in addition to the scents of other drugs, drug-sniffing dogs are trained to alert to the smell of methyl benzoate, a compound formed when cocaine hydrochloride hydrolyzes in moist air; and

m.     That the Courts have recognized unexplained wealth is probative evidence of criminal violations by pecuniary gain, in particular trafficking in controlled dangerous substances (*see United States v. Barnes*, 604 F.2d 121, 147 (2 Cir. 1979)).

### III.  Items to be Forfeited to the United States of America

A total of **$46,660.00 U.S. Currency seized on January 17, 2020,** consisting of the following:

- **$33,600.00 U.S. Currency seized from Isaac Jonathan MERCADO-BERRERA (20-DEA-66063);**
- **$3,660.00 U.S. Currency seized from Isaac Jonathan MERCADO-BERRERA (20-DEA-660068);**
- **$4,400.00 U.S. Currency seized from Servando MERCADO-PINEDA (20-DEA-660065); and**

4

- **$5,000.00 U.S. Currency seized from Servando MERCADO-PINEDA (20-DEA-660067).**

IV.    **Facts and Circumstances**

5.    On January 17, 2020, at approximately 12:02 p.m., DEA TFO Gene Dedeaux conducted a traffic stop on a 2020 Chevrolet Malibu bearing Texas License Plate of MKR6296,[1] on Interstate 10 West at the 44-mile marker in D'Iberville, Mississippi, for improper lane usage.  TFO Dedeaux observed the Malibu traveling in the passing lane for extended periods without overtaking any vehicles.  After speaking with the two occupants, TFO Dedeaux observed that both men appeared to be visibly nervous and were breathing heavily.  When TFO Dedeaux asked the driver, later identified as Isaac MERCADO-BARRERA, for his driver's license and registration, TFO Dedeaux saw MERCADO-BARRERA's hands and arm shaking uncontrollably as he handed TFO Dedeaux his license and a Hertz rental contract.  TFO Dedeaux also noticed the passenger's hands and arm shaking uncontrollably when the passenger, Servando MERCADO-PINEDA, handed over his license.

6.    When asked about Moyses Cortez, MERCADO-BARRERA[2] claimed that Cortez rented the vehicle for him and his father (MERCADO-PINEDA) so that they could go sightseeing in Atlanta, Georgia.  When asked about their travel itinerary, MERCADO-

---

[1]    The Malibu was rented through Hertz Rental by Moyses Cortez, who was not present.  TFO Dedeaux contacted a Hertz employee, who confirmed that neither MERCADO-BARRERA nor MERCADO-PINEDA were listed as alternate drivers of the rental car.

[2]    MERCADO-BARRERA and MERCADO-PINEDA were questioned separately in Spanish, with a Border Patrol Agent translating.

BARRERA claimed they were returning from Atlanta, and headed to Houston, Texas where he was going to pick up his wife.  TFO Dedeaux asked MERCADO-PINEDA, separately, about the rental car; MERCADO-PINEDA claimed that it was rented by MERCADO-BARRERA's friend so that they could go meet other ministers.

7.     TFO Dedeaux learned through the border patrol records of MERCADO-BARRERA and MERCADO-PINEDA's crossings at the Mexican border; on January 15, 2020, at 9:15 a.m. MERCADO-BARRERA and MERCADO-PINEDA—along with their wives—crossed into the United States at the Pharr Point of Entry in a vehicle bearing a Texas license plate of NLY008.  At 10:15 a.m. the same day, MERCADO-BARRERA and MERCADO-PINEDA entered again as pedestrians at the Hidalgo Point of Entry (approximately 11 miles from the Pharr Point of Entry).[3]  There is no record of their leaving the United States, and there is no record of either MERCADO-BARRERA or MERCADO-PINEDA declaring any items or currency at the times of their border crossings.

8.     While at the vehicle window, TFO Dedeaux noticed no clothing or suitcases and only a small backpack on the rear seat and a small handbag at the front passenger's feet.  TFO Dedeaux believed that the minimal amount of luggage was inconsistent for the amount of traveling time for two individuals and was indicative of behavior previously seen in drug and money couriers who make quick trips with minimal stops to minimize their travel time and avoid leaving drugs and/or currency unattended.

_____

[3]   It is approximately 1,147 miles from Hidalgo, Texas, to Atlanta, Georgia, with an estimated driving time of 18 hours and 7 minutes (without stopping for food, gas, or rest).  At this time, the United States is unaware of how and when MERCADO-BARRERA and MERCADO-PINEDA picked up the rental car.

9.      Based on his training and experience, TFO Dedeaux associated the signs of nervousness, lack of luggage, contradicting statements, traveling in a third-party rental, implausible travel itinerary, not declaring currency and traveling from a source city to a city identified as a prominent consumer and distribution hub for narcotics were all indicative behavior of drug and/or money couriers.  Suspecting that criminal activity was afoot, TFO Dedeaux asked for and was granted consent to search of the vehicle.

10.     After receiving MERCADO-BARRERA's consent to search, TFO Dedeaux asked MERCADO-BARRERA if he possessed any large sums of currency or drugs in the vehicle.  MERCADO-BARRERA claimed to only have around $3,000.00 U.S. Currency in his wallet.  This currency was later seized, and later determined to total $3,660.00 U.S. Currency.

11.     TFO Dedeaux asked MERCADO-PINEDA if he possessed any currency. MERCADO-PINEDA surrendered a large bundle of currency secured with a rubber band from within the small handbag at his feet. An official count on a later date revealed that the cash totaled $5,000.00 U.S. Currency.

12.     TFO Dedeaux retrieved the backpack—claimed by MERCADO-BARRERA— from the front seat.  A search of the bag revealed numerous bundles of U.S. Currency, each secured with rubber bands, which were rolled inside of clothing and concealed within the numerous pockets of the bag.  A later official count showed the currency totaled $33,600.00. TFO Dedeaux and assisting officers then examined MERCADO-PINEDA's wallet, which contained additional bulk currency later determined to total $4,400.00 U.S. Currency. MERCADO-PINEDA also possessed a large sum of Mexican currency that was not seized or

counted.  A suitcase was also located in the trunk of the vehicle and contained numerous pairs of newly purchased, high-end jeans.

13.     Based on the aforementioned findings, TFO Dedeaux summoned the assistance of DEA TFO Rob Drace and U.S. Border Patrol Agent Todd Holland and his canine Kendra, assigned to the South Mississippi Metro Enforcement Team, to conduct an open air sniff of the vehicle and currency.  During the open air sniff, Kendra indicated on various parts of the vehicle and on the currency for the presence of the scent of controlled substances.

14.     Agent Holland then interviewed—in Spanish—MERCADO-BARRERA and MERCADO-PINEDA, who both claimed that they are pastors and were returning to Houston, Texas, from Atlanta, Georgia.  They claimed they spent a day in Atlanta shopping and sightseeing, but Agent Holland learned during the stop that they had been in Atlanta for only seven hours during the middle of the night when business are typically closed. MERCADO-BARRERA then related to Agent Holland that he had received a call from his wife in Mexico to return home to care for their sick child.  Agent Holland, however, obtained phone records that both subjects' wives crossed the border into the United States with them and that there was no record of them returning to Mexico.

15.     Because MERCADO-BARRERA and MERCADO-PINEDA claimed they crossed into the United States with the money on their person and in the car, Agent Holland asked whether they declared any currency when they crossed the border, and the two men admitted they did not.  Agent Holland found no record of their declaration, nor was there a record of a declaration filed by MERCADO-BARRERA's or MERCADO-PINEDA's wives.

16.     Neither MERCADO-BARREA nor MERCADO-PINEDA could provide any evidence of legitimate earnings or employment.  A criminal records search did not identify any previous criminal record for either subject, and both men were released after being provided with a receipt for the currency seized from their possession.

17.     TFO Drace was subsequently contacted by DEA Agents from the Atlanta Field Division who arrested an individual responsible for a large scale narcotics distribution network.  During their investigation, they learned that on January 17, 2020, the day of the aforementioned seizure, MERCADO-BARRERA had sent a text message to the Atlanta Field Division's target with a photo of the DEA 12 (receipt for the seized currency) advising the target to drop his cellular phone stating the DEA had seized their currency from them.

18.     On January 21, 2020, agents took the seized currency to the First Bank and Trust in Gulfport, Mississippi, for an official count of $46,660.00 U.S. Currency, consisting of the following: $33,600.00 U.S. Currency seized from MERCADO-BERRERA (20-DEA-66063), $3,660.00 U.S. Currency seized from MERCADO-BERRERA (20-DEA-660068), $4,400.00 U.S. Currency seized from MERCADO-PINEDA (20-DEA-660065), and $5,000.00 U.S. Currency seized from MERCADO-PINEDA (20-DEA-660067).

**IV.     CONCLUSION**

19.     In conclusion, the other investigating agents and I found that a reasonable belief exists that the currency is directly correlated and derived from the illicit distribution of controlled substances.  This determination was made on the facts and circumstances presented above.

$5,000.00 in U.S. Currency seized on January 17, 2020, from Servando MERCADO-PINEDA. I reasonably believe that the money was intended to facilitate or used to further a drug crime, or is directly related to drug proceeds of MERCADO-BARRERA and MERCADO-PINEDA or their associates, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy), 18 U.S.C. § 1956(a)(1) (money laundering), 18 U.S.C. § 1956(a)(2) (international money laundering), 18 U.S.C. § 1956(h) (money laundering conspiracy), 31 U.S.C. §§ 5316(a) (failure to file a Report of International Transportation of Currency or Monetary Instruments (CMIR)), 5324(c) (structuring), and 5332 (bulk cash smuggling), and/or 18 U.S.C. § 1960 (unlicensed money transmitting businesses), and is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881, 18 U.S.C. §§ 981(a)(1)(A) and (C), and 31 U.S.C. §§ 5317 and 5332(c).

21.     I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this 16th day of June, 2020

Robert W. Drace
Task Force Officer
Drug Enforcement Administration

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

1:20-cv-201-HSO-JCG

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

$33,600.00, $4,400.00, $5,000.00, and $3,660.00 UNITED STATES CURRENCY

**(b)** County of Residence of First Listed Plaintiff _____

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Harrison County

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Marc A. Perez, U.S. Attorney's Office
501 East Court Street, Suite 4.430, Jackson, MS 39201  (601) 965-4480

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☒ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
21 U.S.C. 881, 18 U.S.C. 981(a)(1)(A) and (C), 31 U.S.C. 5332(c)

Brief description of cause:
Civil forfeiture of 4 sums of U.S.C., seized from Isaac Jonathan Mercado-Barrera and Servando Mercado-Pineda

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE   6/16/2020

SIGNATURE OF ATTORNEY OF RECORD   s.Marc A. Perez

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____